IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA,**

        Plaintiff,

    v.

**JOSE SORIA-SANTANA,**

        Defendant.

No. 3:22-cr-00188-MO

OPINION AND ORDER

**MOSMAN, J.,**

Before me is defendant Jose Soria-Santana's Motion to Dismiss [ECF 36] his Indictment for illegally reentering the United States after removal in violation of 8 U.S.C § 1326. I heard oral argument on this Motion on July 8, 2026. Soria-Santana argues that his Indictment must be dismissed because it is based on an invalid order of removal. Separately, he moves for dismissal on the grounds that the government violated his Sixth Amendment right to a speedy trial.

To challenge the validity of an order of removal under § 1326(d), a defendant must show three things: (1) that he exhausted available administrative remedies, (2) that he was deprived of judicial review, and (3) fundamental unfairness. 8 U.S.C § 1326(d). I find that Soria-Santana has satisfied §1326(d)'s first two factors, but, because I have unanswered questions regarding the third factor's prejudice element, I reserve ruling on the Motion to Dismiss under § 1326(d) and order further briefing from the parties.

1 – Opinion and Order

To determine if defendant's right to a speedy trial after indictment is violated, I must weigh four factors in a case specific analysis. *United States v. Myers*, 930 F.3d 1113, 1120 (9th Cir. 2019). After weighing the required factors, I deny Soria-Santana's separate Motion to Dismiss based on a speedy trial violation.

Accordingly, the Motion to Dismiss remains pending in part and is denied in part.

## BACKGROUND

Soria-Santana is a native and citizen of Mexico. Def.'s Exs., [ECF 36-1], Ex A at ¶¶ 5. He entered the United States without admission around 1987 when he was 17. *See id.* at ¶ 10–11. In 2003, Soria-Santana was convicted by guilty plea of two counts of committing a lewd act upon a child in violation of California Penal Code § 288 and was sentenced to three years in custody. Def.'s Ex. H at 1–2; Def.'s Ex. I at 2.

While Soria-Santana was serving his prison sentence, he was served with a Form I-851 Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent" or "Form I-851"). Def.'s Ex. B. The English-language form included information about Soria-Santana's alienage, his entry into the United States without admission, and his criminal conviction. *Id.* at 1.

The Form I-851 explained that Soria-Santana was

"amenable to expedited administrative removal proceedings . . . based upon the following allegations:

1.  You are not a citizen or national of the United States.
2.  You are a native of Mexico and a citizen of Mexico.
3.  You entered the United States (at)(near) San Ysidro, California on or about 3/1/1998.
4.  At that time, you **entered without inspection.**
5.  You are not lawfully admitted for permanent residence.
6.  You were, on 11/14/2003, convicted . . . for the offense of Lewd and Lascivious Act Upon Child in violation of Section 288(a) of the California Penal Code; for that offense the term of imprisonment imposed was 3 years.

*Id.* at 1.

2 – Opinion and Order

The Form I-851's "**Charge**" section advised Soria-Santana that he was deportable because he had "been convicted of an aggravated felony." *Id.* The Form I-851's "**Your Rights and Responsibilities**" section stated that he had the right to be represented by counsel at no expense to the government and that he had 10 days to respond to the Notice of Intent. It further advised Soria Santana that in his response he could:

> request for good cause, an extension of time; rebut the charges stated above (with supporting evidence; request an opportunity to review the government's evidence; admit deportability; designate the country to which you choose to be removed in the event that a final order of removal is issued . . . ; and/or, if you fear persecution in any specific country or countries, you may request withholding of removal . . ., or withholding/deferral of removal . . ..

*Id.* The Form I-851 stated that Soria-Santana "had the right to remain in the United States for 14 calendar days" so that he could "file for judicial review of this order to the appropriate U.S. Circuit Court of Appeals," and if he did "not file a petition for review within this 14-day period" he could still "file a petition from outside the United States" as long as he filed it within 30 calendar days from the date of his final order of removal. *Id.*

An Immigration Enforcement Agent signed the Form I-851's proof of service section, stating that the agent had personally served Soria-Santana at the Centinela State Prison on October 26, 2004. *Id.* at 2. This section included a line stating that the agent "explained and/or served this Notice of Intent to the alien in the English Spanish language," but the check box beside this line is blank and the lines for "name of interpreter" and "signature of interpreter" are blank. *Id.* Below the proof of service section's statement "I Acknowledge that I have Received this Notice of Intent to Issue a Final Administrative Removal Order" Soria-Santana's name is written in block letters and there is a signature below the line reading, "Alien refused to acknowledge receipt of this document;" however the check box next to that statement is blank. *Id.*

3 – Opinion and Order

The Form I-851's proof of service portion included a section that Soria-Santana could have filled out had he wished to contest removability. Four check boxes were provided that specified possible grounds:

- I am a citizen or national of the United States.
- I am a lawful permanent resident of the United States.
- I was not convicted for the criminal offense described in allegation number 6 above.
- I am attaching documents in support of my rebuttal and request for further review.

*Id.* These check boxes are blank. *Id.*

Soria-Santana signed the portion of the Form I-851 stating, "I Do Not Wish to Contest and/or to Request Withholding of Removal." The check boxes beside the statements that Soria-Santana admitted the "allegations and charge in the Notice of Intent" and that he was "deportable" and "not eligible for any form of relief from removal" and that he waived his right to judicial review are marked. *Id.*

A Final Administrative Removal Order was issued against Soria-Santana. Def.'s Ex. C. An Immigration Enforcement Agent signed the Certificate of Service confirming that he had served the Order on Soria-Santana on October 29, 2004. A warrant for Soria-Santana's removal was issued on October 20, 2004.[1]

Immigration officials found Soria-Santana back in the United States in 2011. *See* Gov't Exs. E, [43-5]; J [43-9]; and K, [43-11]. He pleaded guilty to one count of illegal reentry and was ordered removed to Mexico. Govt's Ex. J and K. This removal was a reinstatement of his 2004 removal order. Def.'s Ex. E.

---

[1] Soria-Santana's warrant for removal predates his Notice of Intent and Final Administrative Removal Order. *Compare* Def.'s Exs. B and C *with* Def.'s Ex. D. The record indicates that an Immigration Enforcement Agent interviewed Soria-Santana on October 20, 2004, and placed him into expedited administrative removal proceedings after Soria-Santana admitted he was not a United States citizen or lawful permanent resident and that he was convicted of an aggravated felony and denied any fear of returning to Mexico. Gov't Ex. A, [ECF 43-1].

On March 22, 2022, the Department of Homeland Security received notice that Soria-Santana was again in the United States and had been arrested by the local authorities. Def.'s Ex. M. On May 19, 2022, Soria-Santana was indicted on one count of illegal reentry in violation of 1326(d). [ECF 1]. The 2022 Indictment lists Soria-Santana's 2012 removal as the basis for the charge.[2] *Id.* He was arrested on this charge over two years later. Gov't Ex. L, ECF 43-12.

**MOTION TO DISMISS**

Soria-Santana moves to dismiss the Indictment, arguing that his 2004 removal order is invalid. Separately, he contends dismissal is warranted because the twenty-seven-month delay between his indictment and his arrest violated his Sixth Amendment right to a speedy trial.

Soria-Santana argues that I must dismiss the Indictment under § 1326(d) because he can establish the three prongs necessary to collaterally attack his prior removal order, making it invalid and unable to support the illegal reentry charge against him. [ECF 36] at 13. He contends that he meets § 1326(d)'s first two requirements because he had no ability to seek administrative or judicial review in his administrative removal proceedings. *Id.* at 28. Soria-Santana asserts that even if he had any kind of administrative remedy and form of judicial review available to him, he satisfies § 1326(d)'s first two prongs because his right to appeal was denied in violation of due process. *Id.* at 28–29.

In *United States v. Palomar-Santiago*, the Supreme Court held that each of § 1326(d)'s requirements was mandatory and rejected the Ninth Circuit's line of cases concluding that defendants who showed that their removal orders were substantively invalid satisfied the statute's first two requirements. 593 U.S. 321, 327 (2021). According to Soria-Santana, however, this line

---

[2] Soria-Santana argues that his 2012 removal, which is a reinstatement of his 2004 removal, is invalid to the extent that his 2004 removal is invalid. [ECF 32] at 32 citing *United States v. Arias-Ordonez*, 597 F.3d 972, 982 (9th Cir. 2010).

of Ninth Circuit authority survived *Palomar-Santiago* with respect to defendants like him who had administrative removal proceedings, unlike the immigration judge removal proceedings at issue in *Palomar-Santiago*. [ECF 36] at 30. Soria-Santana offers two arguments to support this contention. First, the Form I-851 does not include an option for Soria-Santana to challenge the legal conclusion that his conviction was an aggravated felony; it only allows for contesting the fact of his conviction. *See id.* at 31; *see also* Def.'s Ex. B at 2 (allowing a noncitizen to contest removability because he "was not convicted for the criminal offense" described in the Form I-851). Second, even if the form did provide a way to challenge the conviction's legality, Soria-Santana was not informed of his rights in Spanish. [ECF 36] at 31.

Soria-Santana has submitted a declaration supporting his Motion. He states that he speaks and reads Spanish. Def.'s Ex. A at ¶ 4. He understands and speaks some English but cannot read English. *Id.* He understood and spoke much less English in 2003 and 2004. *Id.* Soria Santana states that when he was in jail in California facing charges related to committing lewd acts upon a child, his first visit with his criminal attorney lasted, at most, fifteen minutes. *Id.* at ¶ 25. Soria-Santana's criminal attorney did not review any of the state's evidence against Soria-Santana or ask Soria-Santana any questions other than if he was married. *Id.* at ¶ 27. The criminal attorney did not ask about Soria-Santana's immigration status or whether he had any family member who were United States Citizens or permanent residents. *Id.* at ¶ 27. Nonetheless, the criminal attorney told Soria-Santana that the offer for him to plead guilty in exchange for a three-year prison term was a "good deal." *Id.* at ¶ 25.

Soria-Santana reports that he saw his criminal attorney for the second time on the day he went to court to plead guilty. *Id.* at ¶ 32. Thirty minutes before his plea hearing, his criminal attorney handed him an English-language form that turned out to be the plea agreement. *Id.* at ¶¶

6 – Opinion and Order

35–36. Soria-Santana's criminal attorney did not read him the English-language form and explained only that the plea offer was for three years, but Soria-Santana would only spend eighteen months in prison. *Id.* at ¶ 36. Soria-Santana's criminal attorney did not tell him that he was pleading guilty to an aggravated felony that could subject him to deportation and prevent him from becoming a United States citizen. *Id.* at ¶¶ 29, 38. Soria-Santana states that if he had known the consequences of his plea to an aggravated felony, he "would have hired an immigration attorney and fought [his] criminal case." *Id.* at ¶ 40.

The record shows that before he represented Soria-Santana, the criminal attorney had disciplinary charges filed against him on three different occasions, had been disciplined twice without suspension, and had been suspended three times. [ECF 36] at 8, fn.4. About ten years after he represented Soria-Santana, the criminal attorney was disbarred after more suspensions and admissions that he had repeatedly failed to competently perform legal services. *Id.* at fn. 5.

Soria-Santana reports that shortly before he was removed in 2004, he was visited by a man, who he now realizes was an immigration agent, who told him that he "would be removed in a few weeks." Def.'s Ex. A at ¶ 45. The agent gave Soria-Santana forms to sign but did not read them aloud before Soria-Santana signed them. *Id.* at ¶ 46. The agent did not translate the forms into Spanish. *Id.* at ¶ 46. The agent spoke broken Spanish and did not explain to Soria-Santana that he had the right to an attorney or that Soria-Santana was being deported because of an aggravated felony. *Id.* at ¶¶ 47–49. The agent did not tell Soria-Santana about any of his legal remedies, including that he could ask to continue his removal proceedings or that he could get an immigration attorney. *Id.* at ¶ 50–51. Soria-Santana states that, if he had understood his rights, he would have consulted an immigration attorney and challenged his 2004 removal. *Id.* at ¶¶ 52–53.

7 – Opinion and Order

For the purposes of this Motion, the government assumes, for the sake of argument, that the agent's failure to read Soria-Santana his Form I-851 in Spanish during his 2004 removal proceedings violated his due process rights. [ECF 43] at 9, 12–13. The government argues, however, that Soria-Santana still fails to show that his 2004 removal was invalid because he cannot establish the prejudice element of § 1326(d)(3)'s fundamental unfairness requirement for lack of plausible grounds for relief from removal. *Id.* Moreover, the government contends that, even if he could establish prejudice, Soria-Santana cannot meet his burden of establishing that he exhausted his administrative remedies or that the removal proceeding deprived him of judicial review. *Id.* at 25. The government asserts that administrative remedies are available in expedited removal proceedings, and Soria-Santana did not exhaust them. *See id.* at 26. In the government's view, *Palomar-Santiago* abrogated the string of Ninth Circuit cases holding that the first two prongs of § 1326(d) are satisfied if a defendant's right to appeal in his removal proceedings was denied in violation of due process. *Id.* at 25–26.

Separately, Soria-Santana moves to dismiss the Indictment based on a violation of his Sixth Amendment speedy trial right. [ECF 36] at 4, 32. He argues that the over two-year delay between his indictment and his arrest is presumptively prejudicial and that the relevant factors a court must consider after such a showing weigh in his favor. *Id.* at 32–33.

The government asserts that the relevant factors show no constitutional speedy trial violation, pointing out, among other things that Soria-Santana requested six trial continuances and that, even assuming he received the last pages of discovery in December 2025, "he has not established that asserting his rights four months after *that* is timely." *Id.* at 32.

///

///

8 – Opinion and Order

**DISCUSSION**

**I.      Section § 1326(d) Motion**

To comport with due process, defendants charged with illegal reentry under § 1326(d) "must have some opportunity for judicial review before that order 'may be used to establish conclusively the element of a criminal offense.'" *United States v. Valdivias-Soto*, 112 F.4th 713, 721 (9th Cir. 2024) (quoting *United States v. Mendoza-Lopez*, 481 U.S. 828, 838 (1987) *superseded by statute as stated in United Staes v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015)). To collaterally challenge the validity of their prior removal order, however, defendants must show:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C § 1326(d).

As noted, the parties dispute whether the Ninth Circuit's rule excusing defendants who show that a removal order was substantively invalid from satisfying § 1326(d)(1) and (d)(2) survives as to defendants like Soria-Santana who were removed after administrative proceedings.

I find that after the Supreme Court's decision in *Palomar-Santiago*, defendants contesting their administrative removal orders under § 1326(d) must satisfy all three statutory requirements. Section 1326(d)'s "requirements are connected by the conjunctive 'and,' meaning defendants must meet all three." *Palomar-Santiago*, 593 U.S. at 326; *see also id.* at 327 (noting "the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies . . . or was deprived of the opportunity for judicial review"). "When Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not

9 – Opinion and Order

excuse a failure to exhaust.'" *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)). The Supreme Court clearly rejected the Ninth Circuit's rule excusing a failure to exhaust if defendants showed a due process violation. *See id.* at 326–27. I can find nothing § 1326(d)'s text to indicate that the limitation on challenges to the validity of the underlying removal order in illegal reentry prosecutions applies only to removal orders issued in immigration judge proceedings; to the contrary, it clearly applies to "any alien who . . . has been deported, or removed . . . and thereafter enters . . . the United States." 8 U.S.C § 1326(a)(1), (d) ("an alien may not challenge the validity of the deportation order described in subsection (a)(1) . . . unless the alien" satisfied all of § 1326(d)'s requirements).

The Supreme Court left open, however, the possibility that an existing administrative remedy is not "available" if it is not capable of use. *See id.* at 328 (referencing the circumstances outlined in *Ross* making an administrative remedy unavailable). In *Ross*, the Supreme Court outlined three circumstances where administrative remedies are not "available" and therefore need not be exhausted to satisfy a statutory requirement. *Ross*, 578 U.S. at 643–44. *Ross* considered a provision of the Prison Litigation Reform Act that, like § 1326(d), requires prisoners to exhaust "such administrative remedies as are available" before filing suit in federal court. *Compare* 42 U.S.C § 1997e(a) *with* 8 U.S.C § 1326(d)(1). The Supreme Court listed three circumstances where an administrative remedy was not available because it was incapable of use: (1) the administrative procedure operates as a simple dead end; (2) the administrative scheme is so opaque that it becomes, practically speaking, incapable of use; and (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, intimidation, or misrepresentation. *Ross*, 578 U.S. at 643–44. In 2024, Ninth Circuit held that *Ross* applies for "purposes of § 1326(d)(1)'s exhaustion requirement." *See Valdivias-Soto*, 112 F.4th at 730.

10 – Opinion and Order

Accordingly, I find that for Soria-Santana to successfully challenge the validity of his 2004 removal, he must establish that he meets all three of § 1326(d)'s requirements or he must show that any available administrative remedies were unavailable because they were incapable of use and that he was deprived of the opportunity for judicial review. I address each of § 1326(d)'s requirements below.

### A.     Exhaustion of Administrative Remedies

Section 1326(d) first requires that the defendant must have exhausted available administrative remedies. As discussed above, I must examine exhaustion separately from § 1326(d)'s other two requirements, and even if Soria-Santana's removal proceedings were infected with a due process violation that might implicate fundamental unfairness as contemplated by § 1326(d)(3), exhaustion is still required. *See Palomar-Santiago*, 593 U.S. at 326–27. The statute's text specifies that a defendant must exhaust "any administrative remedies that may have been *available to seek relief against the order*." 8 U.S.C § 1326(d)(1) (emphasis added). Because Soria-Santana did not dispute the fact of his conviction, his only avenue for relief was to challenge his conviction's legality—whether his plea to an aggravated felony was invalid due to ineffective assistance of counsel. I agree with Soria-Santana's argument that no remedies were available to challenge the legal basis for his removal.

At oral argument, Soria-Santana's counsel argued that the administrative procedure in his removal proceeding was so opaque that it was, as a practical matter, incapable of use because the remedy was not explained in a language Soria-Santana understood. The government asserted that the best argument for unavailability was the third *Ross* circumstance—Soria-Santana was thwarted from using available remedies because he could not understand them. After careful consideration,

11 – Opinion and Order

as alluded to above, I find that the first *Ross* circumstance is the best fit but that the second circumstance also applies to the facts here.

An administrative remedy is not "available" if it operates as a "simple dead end." *Ross*, 578 U.S. at 633. Soria-Santana's administrative removal process did not afford him any administrative options for challenging the legal basis for his aggravated felony conviction. Under the relevant immigration regulations, an administrative response to a final order of removal is limited to: (1) designation of choice of country for removal; (2) submission of a written response rebutting the allegations supporting the charge; (3) requesting the opportunity to review the government's evidence; and/or (4) requesting withholding of removal. 8 C.F.R. § 238.1(c)(1). This comports with the four check boxes on Soria-Santana's Form I-851. *See* Def.'s Ex. B. Although one of the options for administrative review was to rebut the removal allegations, the regulations provide only for consideration of factual issues, not legal challenges. 8 C.F.R. 238.1(d)(d)(ii)(A). This is again consistent with the four check boxes on Soria-Santana's Form I-851. Thus, Soria-Santana's available administrative remedies operated as a dead end because they could not "fix [the] very error" that he asserts rendered his removal order invalid. *See Palomar-Santiago*, 593 U.S. at 322.

Because Soria-Santana had no administrative remedy available, even if the agent had read the Form I-851 to him in English, I find that there was no remedy to exhaust.

I also find that a failure to inform Soria-Santana of his administrative remedies in the language that he understood—Spanish—fits the second exception in *Ross*: an administrative scheme that is so opaque that it becomes, practically speaking, incapable of use. Admittedly, this second circumstance does not map onto the facts of this case as readily as the first. Nor is it easy to discern exactly what the second circumstance is talking about. But if we assume—as I do on

12 – Opinion and Order

this record—that the relevant forms and explanations were only provided to Soria-Santana in English, and if we also assume—as I do here—that in 2004 Soria-Santana could neither read the form nor understand any explanation in English, then the administrative scheme becomes by definition opaque—hard to understand. The process that exists to provide relief becomes, because of the language barrier, a scheme that Soria-Santana cannot "discern or navigate" *Ross*, 578 U.S. at 644.

I find that the available remedy was, in this context, "essentially unknowable" and, as a practical matter, Soria-Santana was incapable of using it. *See id.* at 643–44.

For these two reasons—the administrative procedure operated as a dead end and it was so opaque that it was, as a practical matter, incapable of use—I find that Soria-Santana meets 8 U.S.C § 1326(d)(1)'s requirement.

### B.    Deprivation of Opportunity for Judicial Review

In contrast to the administrative remedies available in expedited removal proceedings, judicial review provided Soria-Santana with the possibility of challenging the legal basis for his aggravated felony conviction. At the time of his 2004 removal, Congress had stripped the judiciary of jurisdiction to review expedited removals. 8 U.S.C § 1252(a)(2)(A)(iii). Case law, however, made clear that federal courts retained jurisdiction to determine their jurisdiction. *See Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir.2000) (concluding the court had "jurisdiction to determine our own jurisdiction" in the context of a determination of whether a noncitizen's crime constituted an aggravated felony). Indeed, Soria-Santana's Form I-851 stated that he had the right to seek judicial review in the appropriate circuit court. Def.'s Ex. B.

Soria-Santana, however, argues that he was deprived of the opportunity for judicial review under 8 U.S.C § 1326(d)(2) because he never validly waived his right to judicial review. *See*

13 – Opinion and Order

*Mendoza-Lopez*, 481 U.S. at 840. When a defendant challenges the validity of his waiver of the right to judicial review, the government must establish a valid waiver. *See United States v. Valdivia-Flores*, 876 F.3d 1201, 1205 (9th Cir. 2017). This requires that the government "prove by clear and convincing evidence that the alien received adequate advisement of the consequences of his waiver of appeal." *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1148 (9th Cir. 2021) (citations and internal quotation marks omitted).

Relying on *Valdiva-Flores*, Soria-Santana indirectly argues that the government cannot meet its burden because the Form I-851 used in his removal proceedings violated his right to due process. *See Valdivia-Flores*, 876 F.3d at 1205–06 (concluding that a Notice of Intent that did not inform a noncitizen of his right to refute the "legal conclusion underlying his removability" rendered the noncitizen's waiver of his right to seek judicial review invalid). Like in *Valdiva-Flores*, the Form I-851 used by the agent did not inform Soria-Santana that he could "refute through, either an administrative or judicial procedure, the legal conclusion underlying his removability." 876 F.3d at 1206. Instead, "the only check box relevant to the conviction itself only allowed" Soria-Santana to challenge "that he was not convicted of the criminal offense described." *See id.* Moreover, the agent did not translate the form into Spanish. Def.'s Ex. A at ¶ 46.

The government concedes, for the sake of argument, that the agent did not read the Form I-851 to Soria-Santana in Spanish. The government makes no argument that any immigration official explained to Soria-Santana, in any language, that judicial review was broader than administrative review and could have allowed him to challenge the legal basis for his conviction. *See generally* [ECF 43]. By its plain wording, the Form I-851 did not suggest that Soria-Santana had the ability to seek judicial review of the legality of his conviction. *See* Def.'s Ex. B; *see also cf. Valdivias-Soto*, 112 F. 4th at 727 (defendant "does not contend that the IJ misinformed him of

14 – Opinion and Order

his ability to *apply* for a U-visa while appealing his removal order; only that his conviction rendered him substantively *ineligible* for relief").

I find that *Valdivia-Flores*'s rule regarding the requirements for a considered and intelligent waiver survived *Palomar-Santiago.* The Ninth Circuit has clarified that the government's burden to prove a valid waiver of judicial review applies post-*Palomar-Santiago*. *Valdivias-Soto*, 112 F.4th at 725 (concluding waiver was invalid based on erroneous translation of defendant's right to counsel). *Palomar-Santiago*'s impact in the waiver context is that substantive misstatements about the *availability of relief* from removal through judicial review will not establish that a defendant was deprived of his opportunity for judicial review but misleading statements about a defendant's *opportunity to seek judicial relief* will. *See id*. at 728–29; *see also Palomar-Santiago*, 593 U.S. at 328 (immigration judge's error on the merits does not establish that an appeal is unavailable).

I find that agent's failure to translate the Form I-851 when it was served on Soria-Santana renders Soria-Santana's waiver of his right to appeal invalid. First, because he did not understand that he had a right to appeal, it misled him about his opportunity to seek judicial review. Second, it denied him the opportunity to have an attorney advise him of the possible benefits of seeking judicial review. Def.'s Ex. A at ¶¶ 50–55. Third, because the form was not translated, it misled Soria-Santana about his right to counsel, not at the government's expense, when he sought judicial review. *Id.* at ¶ 52. Because the Form I-851 was not in a language that Soria-Santana could understand, the government has not carried its burden to overcome the presumption against waiver. *See Valdivias-Soto*, 112 F.4th at 728–29; *see also United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2022) (the government bears the burden of proving a valid waiver of the right to appeal and the "presumption against waiver" applies).

Additionally, the Form I-851 misled Soria-Santana about his opportunity to seek judicial review to challenge the legality of his conviction. *See Valdivias-Soto*, 112 F.4th at 727. Like in *Valdivia-Flores*, the one check box on the Form I-851 form relevant to Soria-Santana's conviction only allowed him to contest the fact of his conviction. Def.'s Ex. B at 2. As in *Valdivia-Flores*, these "deficiencies are magnified" because Soria-Santana "was not represented and never had the benefit of appearing before an immigration judge" who likely would have adequately conveyed Soria-Santana's appeal options and the gravity associated with waiving his appeal rights. 876 F.3d at 1206. Under these circumstances, the government cannot meet its burden of showing that his waiver was "considered and intelligent." *See id.*; *see also Valdivias-Soto*, 112 F.4th at 727 (indicating that misinformation about "ability to *apply*" for relief renders a waiver invalid).

For reasons similar to my finding on exhaustion of administrative remedies, I find that the failure to inform Soria-Santana of his judicial remedies in Spanish and the Form I-851's misleading information about the opportunity to challenge the legal basis of his criminal conviction means that the government has not met its burden under *Valdivia-Fores* of showing a valid waiver. Accordingly, I find that Soria-Santana has established that his removal proceedings improperly deprived him of the opportunity for judicial review, and that he meets 8 U.S.C § 1326(d)(2)'s requirement.

### C.    Fundamental Unfairness

Soria-Santana must also show that the entry of his removal order was fundamentally unfair to satisfy § 1326(d)(3). This requirement is met where the defendant shows that defects in the removal proceeding deprived him of due process and he suffered prejudice as a result. *United States v. Nunez*, 140 F.4th 1157, 1167 (9th Cir. 2025). Removal on an improper basis can establish fundamental unfairness. *See United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014).

16 – Opinion and Order

The government concedes, for the sake of argument, that Soria-Santana was deprived of due process in his 2004 removal proceedings because the agent did not read the English-language I-185 Form to him in Spanish.

Soria-Santana argues that he can establish that he suffered prejudice because of the due process deprivation because he had two plausible grounds for relief from removal. He could have filed a motion under California Penal Code Section 1016.5 to vacate his aggravated felony conviction or he could have filed a writ of habeas corpus in California state court challenging the conviction on the basis of ineffective assistance of counsel. [ECF 36] at 22. Soria-Santana offers examples of habeas relief granted by California courts in situations like his. For example, in *People v. Soriano*, the California Court of Appeals granted a defendant noncitizen habeas relief after he pleaded guilty without counsel adequately advising him of the deportation consequences of his plea. 194 Cal. App. 3d 1470, 1480–82 (1987). He also explains it is more than probable that he could have obtained relief through a motion under California Penal Code Section 1016.5, which requires trial courts to administer an advisement to noncitizens before guilty pleas. [ECF 36] at 26–27. I find that it is at least plausible that, if Soria-Santana had filed a habeas petition, he would have been successful, especially given his criminal attorney's disciplinary history and disbarment. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 20110.

The government contends that this is not enough. According to the government, Soria-Santana still cannot establish prejudice because he is statutorily ineligible for relief or a discretionary grant of voluntary removal even without his aggravated felony conviction. [ECF 43] at 19–20. At oral argument, Soria-Santana's counsel agreed that if his conviction were overturned, he would have been put into immigration judge proceedings.

17 – Opinion and Order

Soria-Santana's counsel argued that Soria-Santana is not required to prove that he was plausibly entitled to relief in immigration judge proceedings. If, however, he is so required, counsel contended that Soria-Santana could establish prejudice because it is plausible that he would have been entitled to voluntary departure because he no longer had an aggravated felony conviction. Counsel explained that voluntary departure, which is granted at the immigration judge's discretion, allows the noncitizen to return to the United States and seek adjustment of status. For someone like Soria-Santana who had a very young (at the time) United States citizen child who was suffering from economic hardship, it would be plausible to apply for legal relief to return to the United States. Counsel offered to provide further briefing on voluntary departure.

Because I continue to have questions about how to define prejudice, I cannot determine whether Soria-Santana has established fundamental unfairness as required by § 1326(d)(3). Accordingly, I order the parties to file supplemental briefing on two questions. First, if Soria-Santana's aggravated felony conviction was vacated, does the Form I-851 provide any other basis for removing him. *See e.g.*, *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) (holding a defendant has established prejudice where his Notice to Appear "charged him as removable *only* for having committed an aggravated felony," and his conviction did not fit that definition). Second, if the answer to the first question is yes, does depriving Soria-Santana of the ability to seek voluntary departure constitute prejudice. The parties are not limited in their briefing to only these two questions. If the parties believe that there are other relevant issues to address after reviewing this Opinion and Order, they may include them in the briefing.

## II.    Speedy Trial Motion

The Sixth Amendment protects the right to a speedy trial after indictment. *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003). Courts assess allegations of constitutional speedy

18 – Opinion and Order

trial violations under the four-part test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Id. The factors are: (1) "[t]he length of the delay"; (2) "the reason the government assigns to justify the delay"; (3) "the defendant's responsibility to assert his right" to a speedy trial; and (4) the "prejudice to the defendant." *Id.* All four *Barker* factors must be balanced "in a practical, case- by-case analysis." *United States v. Myers*, 930 F.3d 1113, 1120 (9th Cir. 2019). None of the *Barker* factors is "a necessary or sufficient condition" to finding a speedy trial violation. *Id.* (citing *Barker*, 407 U.S. at 533). "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

The delay between Soria-Santana's indictment and arrest was just over two years, which as the government concedes, is enough to trigger an inquiry into the *Barker* factors. *See United States v. Alexander*, 817 F.3rd 1178, 1181 (9th Cir. 2016). The government, however, establishes that it proceeded with reasonable diligence in locating Soria-Santana. *Doggett v. United States*, 505 U.S. 647, 656 (1992). When Immigration officials learned of Soria-Santana's booking in the Washington County jail, they tried to find him. Gov't Exs, L &N. Agents conducted surveillance on three known addresses associated with Soria-Santana and identified a new address by checking the state court database but still did not find him. Gov't Ex. L. When subsequent investigation identified a new address and truck registered in Soria-Santana's name, Immigration officials conducted surveillance and found and arrested Soria-Santana. *Id.* Thus, I find that, given the circumstances, the government pursued Soria-Santana's arrest with reasonable diligence.

Soria-Santana contends that the assertion-of-speedy-trial-rights factor is neutral. Reply, [ECF 44] at 21. He argues that, although he focused on the twenty-seven-month period between his indictment and arrest in his Motion, the actual delay in this case for *Barker* purposes is four years. *Id.* According to him, the government is solely responsible for the twenty-seven-month

19 – Opinion and Order

delay and partially responsible for the delay in discovery, which resulted in Soria-Santana seeking six continuances. *See id.* Given the circumstances here, I give this factor little weight.

Finally, counter to Soria-Santana's assertion, prejudice is not automatically presumed; instead, "its weight in the defendant's favor depends on the reason for the delay and the length of the delay." *Alexander*, 817 F.3d at 1182. I find that the government's delay was not intentional or negligent and that the length was reasonable based on the difficulties in finding Soria-Santana's address. *See id.* Thus, Soria-Santana must show actual prejudice, which he cannot do. *See Doggett*, 505 U.S. at 654. There is nothing in the record that would indicate that the delay in arresting Soria-Santana caused him anxiety or impaired his defense. *Id.* Moreover, Soria-Santana is not in custody and has not shown that the delay impaired his ability to prepare his defense. *Id.*

For these reasons, I find that Soria-Santana has failed to establish a Sixth Amendment violation and deny his separate motion to dismiss on these grounds.

///

///

///

///

///

///

///

///

///

///

20 – Opinion and Order

**CONCLUSION**

For the reasons stated above, the Motion to Dismiss is denied in part and remains pending in part. I deny Soria-Santana's Motion to Dismiss based on a speedy trial violation. I reserve ruling on his Motion under § 1326(d) and order further briefing from the parties. I order the parties to provide simultaneous supplemental briefing on the following two questions, which I described in more detail above:

1. If Soria-Santana's aggravated felony conviction was vacated, does the Form I-851 provide any other basis for his removal?

2. If yes, does depriving Soria-Santana of the ability to seek voluntary departure constitute prejudice?

If the parties believe that there are other relevant issues to address, they may include them in their briefing.

**Because this matter is set for trial on August 5, 2026, the parties' simultaneous briefing is due by July 29, 2026.** I will hear any needed oral argument before the trial begins on August 5, 2026.

IT IS SO ORDERED.

DATED this 24th day of July, 2026.

*Michael W. Mosman*

MICHAEL W. MOSMAN
United States District Judge

21 – Opinion and Order