SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SARAH BARR, WSB #40758**
Assistant United States Attorney
Sarah.Barr@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:22-cr-00188-MO** |
| **v.** | **GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT, ECF No. 36** |
| **JOSE SORIA-SANTANA,** | |
| **Defendant.** | |

## TABLE OF CONTENTS


ARGUMENT ........................................................................ 1

1. If Soria-Santana's aggravated felony conviction was vacated, does the Form I-851 provide any other basis for his removal? ........................................ 1

   A. Legal Framework for assessing prejudice ........................................ 2

   B. Defendant has not met his burden to prove that he would no longer be amenable to administrative removal even with his guilty plea vacated ........... 4

   C. Even if defendant met his burden to prove that vacating his guilty plea would have absolved him of administrative removal proceedings, his proceedings would have been transferred to immigration court. ..................... 9

2. If yes, does depriving Soria-Santana of the ability to seek voluntary departure constitute prejudice? ........................................ 20

   A. Voluntary Departure was not plausible ........................................ 21

      i. Defendant cannot establish that post-conclusion voluntary departure was plausible because he was statutorily ineligible for it even with a § 288(a) conviction ........................................ 23

      ii. Defendant cannot establish that post-conclusion or pre-conclusion voluntary departure were plausible because he cannot show that a favorable exercise of discretion was plausible ........................................ 25

CONCLUSION ........................................................................ 31

# TABLE OF AUTHORITIES


Cases Page(s)

*Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238 (10th Cir. 2012) ........ 19

*Barton v. Barr*, 590 U.S. 222 (2020) ........ 15

*Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102 (9th Cir. 2006) ........ 7, 8

*Chowdhury v. I.N.S.*, 249 F.3d 970 (9th Cir. 2001) ........ 6,7

*De Freitas v. Mukasey,* 256 F. App'x 985 (9th Cir. 2007) ........ 18

*Dominguez v. Barr*, 975 F.3d 725 (9th Cir. 2020) ........ 18

*Dominic MBA v. Gonzales*, 231 F. App'x 726 (9th Cir. 2007) ........ 29

*Falomir-Montoya v. Garland,* 2022 WL 3974272, at *1 (9th Cir. Aug. 31, 2022) ........ 18

*Farias-Avalos v. I.N.S.,* 24 F.3d 245 (9th Cir. 1994) ........ 29

*Garcia-Gonzalez v. United States*, 2023 WL 3044907, at *3 (D. Ariz. Apr. 21, 2023) ........ 6

*Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) ........ 21

*Gonzalez-Caraveo v. Sessions*, 882 F.3d 885 (9th Cir. 2018) ........ 19

*Gonzalez-Cervantes v. Holder*, 709 F.3d 1265 (9th Cir. 2013) ........ 23

*Gonzalez-Espitia v. Garland*, 2023 WL 2675066, at *1 (9th Cir. Mar. 29, 2023) ........ 26

*Gonzalez-Juarez v. Sessions*, 725 F. App'x 585 (9th Cir. 2018) ........ 21

*Ibarra-Flores v. Gonzales*, 439 F.3d 614 (9th Cir. 2006) ........ 21

*Lopez v. Garland*, 40 F.4th 996 (9th Cir. 2022) ........ 19

*Lopez v. Garland*, 2021 WL 5071502, at *1 (9th Cir. Nov. 2, 2021) ........ 24

*Matter of Posadas–Posadas*, 2012 WL 371659 (BIA Jan. 18, 2012) ........ 29

*Matter of Serna*, 20 I. & N. Dec. 579 (BIA 1992) ........ 29

*Morgan v. Gonzales*, 495 F.3d 1084 (9th Cir. 2007) ........ 18

*Okobi v. Holder*, 527 F. App'x 710 (10th Cir. 2013) ....................19

*People v. Castro-Vasquez*, 148 Cal. App. 4th 1240 (2007) ....................5

*People v. Soriano*, 194 Cal. App. 3d 1470 (Ct. App. 1987) ....................5

*In Re G-N-C*, 22 I. & N. Dec. 281 (BIA 1998) ....................19

*In Re: Luciano Duran-Arreola A.K.A. Luciano Arreola*, 2015 WL 8561140, at *1 (DCBABR Nov. 23, 2015) ....................30

*Rojas v. Holder*, 704 F.3d 792 (9th Cir. 2012) ....................23, 26

*Rosales-Rosales v. Ashcroft*, 347 F.3d 714 (9th Cir. 2003) ....................18

*Shepherd v. U.S. Atty. Gen*., 559 F. App'x 837 (11th Cir. 2014) ....................29

*Taylor v. U.S. I.N.S.*, 24 F.3d 249 (9th Cir. 1994) ....................29

*United States v. Alvarado-Pineda*, 774 F.3d 1198 (9th Cir. 2014) ....................30

*United States v. Ambriz*, No. 17-CR-00055-YGR-1, 2019 WL 803843, at *7 (N.D. Cal. Feb. 21, 2019) ....................5, 6

*United States v. Andino-Matamoros*, 365 F. Supp. 3d 1109 (D. Nev. 2019) ....................26

*United States v. Barajas-Alvarado*, 655 F.3d 1077 (9th Cir. 2011) ....................2

*United States v. Bustos-Ochoa*, 704 F.3d 1053 (9th Cir. 2012) ....................3

*United States v. Cisneros-Rodriguez*, 813 F.3d 748 (9th Cir. 2015) .................... *passim*

*United States v. Camacho-Lopez*, 450 F.3d 928 (9th Cir. 2006) ....................16, 17, 18, 19

*United States v. Contreras*, 406 F. App'x 160 (9th Cir. 2010) ....................25

*United States v. Flores-Cervantes*, No. 2:15-CR-177-DSF, Dkt. No. 48 (C.D. Cal. May 25, 2016)) ....................6, 7

*United States v. Gonzalez-Alvarez*, 2018 WL 2717265, at *17 (S.D. Cal. May 18, 2018) ....................26

*United States v. Gonzalez-Melchor*, 511 F. App'x 646 (9th Cir. 2013) ....................25

*United States v. Garcia-Martinez*, 228 F.3d 956 (9th Cir. 2000) ....................2, 3

*United States v. Gaona-Cornejo*, No. 21-CR-00199-CRB-1, 2024 WL 2943772, at *12 (N.D. Cal. June 10, 2024), aff'd, 2025 WL 2992543 (9th Cir. Oct. 24, 2025)..............6

*United States v. Gomez*, 757 F.3d 885 (9th Cir. 2014) ............................................................2, 4

*United States v. Gonzalez-Fierro*, 949 F.3d 512 (10th Cir. 2020)..................................................3

*United States v. Gonzalez-Flores*, 804 F.3d 920 (9th Cir. 2015)..................................................25

*United States v. Lopez-Collazo*, 824 F.3d 453 (4th Cir. 2016).......................................................3

*United States v. Medina*, 2023 WL 1960649, at *2 (9th Cir. Feb. 13, 2023)...............................25

United *States v. Martinez-Sanchez*, 668 F. App'x 274 (9th Cir. 2016)........................................25

*United States v. Morin-Moreno*, 2026 WL 1452438, at *2 (9th Cir. May 22, 2026)....................25

*United States v. Nunez*, 140 F.4th 1157 (9th Cir. 2025)........................................................25, 28

*United States v. Ortiz-Lopez*, 385 F.3d 1202 (9th Cir. 2004).......................................................21

*United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004)..................................................17

*United States v. Pena-Robles*, 479 F. App'x 747 (9th Cir. 2012)....................................................2

*United States v. Peralta-Sanchez*, 705 F. App'x 542 (9th Cir. 2017).......................................2, 12

*United States v. Ramos*, 623 F.3d 672 (9th Cir. 2010) ..........................................................2

*United States v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012) ..............................................2, 3

*United States v. Rojas-Pedroza*, 716 F.3d 1253 (9th Cir. 2013) ...............................22, 25, 26, 28

*United States v. Santos-Santos*, 2022 WL 2801033, at *1 (9th Cir. July 18, 2022) ...............25, 28

*United States v. Valdez-Novoa*, 780 F.3d 906 (9th Cir. 2015)..........................................3, 25, 28

*United States v. Vidal-Mendoza*, 705 F.3d 1012 (9th Cir. 2013)....................................................4

*United States v. Zavala-Cruz*, 2023 WL 4578828 (9th Cir. July 18, 2023) .................................25

*Zamorano v. Garland*, 2 F.4th 1213 (9th Cir. 2021) ..............................................................3

*Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166 (9th Cir. 2003) .....................................................26

Federal Statutes

8 U.S.C. § 1101(a)(43)(D) ....................6

8 U.S.C. § 1227(a)(2)(A) ....................17

8 U.S.C. § 1228(b)(1) ....................4, 10

8 U.S.C. § 1229b(b) ....................22

8 U.S.C. 1229c(a)(1) ....................21

18 U.S.C. § 1326(d) .................... *passim*

Federal Regulations

8 C.F.R. § 238.1 (2003) ....................4, 5, 10, 15

8 C.F.R. § 239.2(a)(6) ....................18

8 C.F.R. § 240.26(b)(1) (2003) ....................21

8 C.F.R. § 240.26(c)(1) (2003) ....................21

8 CFR § 1003.30 ....................18

Immigration and Nationality Act

INA § 237(a)(2)(A)(iii) .................... *passim*

INA § 212(a)(6)(A)(i) .................... *passim*

Other Authorities

California Penal Code 243.4(e) ....................23

California Penal Code 288(a) .................... *passim*

The United States hereby responds to this Court's order for supplemental briefing. As discussed below, the answer to the court's first question is yes, but it is the wrong question. The first question must be: assuming defendant had obtained counsel and vacated his guilty plea, has he established that it was plausible he would be no longer amenable to administrative removal? The answer is no, and that ends the inquiry. But even if the answer were yes, the next question is: given the governing regulations and the record in this case, was it plausible that defendant's removal proceedings would have transferred to immigration court proceedings? The answer to that question is yes.

The answer to the court's second question posed is, no, but it is again the wrong question. The relevant question now is: has defendant established it was plausible that, once transferred to immigration court proceedings, he would have been granted voluntary departure? The answer here is also, no.

## ARGUMENT

**1. If Soria-Santana's aggravated felony conviction was vacated, does the Form I-851 provide any other basis for his removal?**

As explained below, the answer to this question is yes, but the first material question on the prejudice issue really is: assuming defendant obtained counsel and succeeded in vacating his guilty plea, was it plausible he would no longer be amenable to administrative removal? He has not met his burden to show that vacating his guilty plea would absolve him of being subject to administrative removal. That ends the prejudice question and his § 1326(d) motion must be denied.

/ / / /

/ / / /

**A. Legal framework for assessing prejudice.**

Establishing prejudice is a high bar—one the Ninth Circuit regularly affirms has not been met, even in cases finding or assuming a due process violation like the one assumed here. *See United States v. Gomez*, 757 F.3d 885, 896 (9th Cir. 2014) (due process violation in inadequate advisals in stipulated removal proceeding but no prejudice because alien was ineligible for relief from removal); *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1046 (9th Cir. 2012) (due process violation in failure to advise alien of rights in administrative removal proceedings in alien's language, but no prejudice because relief of deferral of removal under the torture convention was not plausible); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1088 (9th Cir. 2011) (assuming due process violation in failure to translate removal proceedings, no prejudice because being allowed to withdraw his application for admission was not plausible); *United States v. Peralta-Sanchez*, 705 F. App'x 542, 544-46 (9th Cir. 2017) (assuming violation in right to counsel in administrative removal, and assuming counsel could have gotten the case transferred to an immigration judge, no prejudice because relief in immigration court not plausible); *United States v. Pena-Robles*, 479 F. App'x 747, 749 (9th Cir. 2012) (assuming violation in denial of the right to counsel, no prejudice because conviction made him statutorily ineligible for relief); *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) (finding due process violation in stipulated removal proceedings because form was not translated and alien was deprived of the right to counsel, but no prejudice because alien was statutorily ineligible for the relief he claimed he could have received); *United States v. Garcia-Martinez*, 228 F.3d 956, 963 (9th Cir. 2000) (assuming due process violation in administrative removal, no prejudice because conviction made him statutorily ineligible for relief).

A defendant bears the burden of establishing actual prejudice. 18 U.S.C. § 1326(d)(3); *Reyes-Bonilla*, 671 F.3d at 1049; *see also Valdez-Novoa*, 780 F.3d at 917 ("We reaffirm that the burden to show prejudice rests with the defendant"); *Garcia-Martinez*, 228 F.3d at 963–64 (defendant must establish actual prejudice).

The alleged prejudice must flow from the asserted procedural defect. *Garcia-Martinez*, 228 F.3d at 963; *United States v. Lopez-Collazo*, 824 F.3d 453, 462 (4th Cir. 2016) ("[t]his is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue"); *United States v. Gonzalez-Fierro*, 949 F.3d 512, 524 (10th Cir. 2020) (finding the defendant failed to show that, "had he been better advised of his rights, he would have avoided removal").

To establish actual prejudice, the defendant must show that he had "plausible grounds for relief from deportation." *Garcia-Martinez*, 228 F.3d at 963. Plausibility requires more than what is merely "conceivable." *Valdez-Novoa*, 780 F.3d at 914. A mere possibility of relief from removal is not enough. *Id*. A plausible claim to relief "requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible." *Reyes-Bonilla*, 671 F.3d at 1049–50. Moreover, plausibility requires that a respondent be "apparently eligible" for relief before an adjudicator is tasked with assessing such relief. *Valdez-Novoa*, 780 F.3d at 914; *Zamorano v. Garland*, 2 F.4th 1213, 1223 (9th Cir. 2021). The prejudice must be of a "manner so as potentially to affect the outcome of the proceedings; a mere showing that [he] would have availed himself of the procedural protections denied him is not enough." *United States v. Bustos-Ochoa*, 704 F.3d 1053, 1056 (9th Cir. 2012). A defendant's claim that rests on "speculation atop speculation" "falls far short of showing that relief was 'plausible.'" *Id*. at 1057

"[W]e look to the law at the time of the deportation proceedings to determine whether an alien was eligible for relief from deportation." *Gomez*, 757 F.3d at 899; *see also United States v. Vidal-Mendoza*, 705 F.3d 1012, 1019 (9th Cir. 2013) ("We begin with the applicable law at the time of [the alien's] removal hearing," finding voluntary departure not plausible because at the time of the removal hearing, he was ineligible for it).

**B. Defendant has not met his burden to prove that he would no longer be amenable to administrative removal even with his guilty plea vacated.**

Immigration officers may pursue administrative removal proceedings to "determine the deportability" of an alien "under section 1227(a)(2)(A)(iii) [INA § 237(a)(2)(A)(iii)] (relating to the conviction of an aggravated felony" and "issue an order of removal" for any alien who is not a lawful permanent resident or designated conditional resident. 8 U.S.C. § 1228(b)(1). To do this, the regulations clarify that immigration officials:

> *shall* cause to be served upon an alien a Form I-851, Notice of Intent to Issue a Final Administrative Deportation Order (Notice of Intent), *if* the officer is satisfied that there is sufficient evidence, based upon questioning of the alien by an immigration officer and upon any other evidence obtained, to support a finding that the individual:
>
> i. Is an alien;
> ii. Has not been lawfully admitted for permanent residence, or has conditional permanent resident status under section 216 of the Act;
> *iii. Has been convicted (as defined . . .) of an aggravated felony and such conviction has become final; and*
> *iv. Is deportable under section 237(a)(2)(A)(iii) of the Act* . . . .

8 C.F.R. § 238.1(b)(1) (2003) (emphasis added). If the immigration officer "finds that the record of proceeding, including the alien's timely rebuttal, raises a genuine issue of material fact regarding the preliminary findings," the officer "may either obtain additional evidence from any source, including the alien, or cause to be issued a notice to appear to initiate removal proceedings under section 240 of the Act." 8 C.F.R. § 238.1(d)(2)(ii)(A) (2003). The officer

must proceed with issuing a Final Administrative Removal Order if, "after considering all additional evidence," he finds that "deportability is established by clear, convincing, and unequivocal evidence in the record of proceeding." 8 C.F.R. § 238.1(d)(2)(ii)(B) (2003).

Defendant cannot show beyond speculation that he would not have been convicted of the same offense at trial even after successfully vacating his guilty plea. Succeeding in collaterally attacking his § 288(a) conviction is not the end of the story. It just means he would have been allowed to withdraw his guilty plea. It does not invalidate the prosecution. The cases cited in his own brief confirm this. In *People v. Soriano*, 194 Cal. App. 3d 1470, 1482 (Ct. App. 1987), the court granted the defendant's habeas petition and ruled that his "judgment of conviction is vacated and the case is remanded to the trial court to allow him to withdraw his guilty plea." Thus, a successful habeas petition merely would have put him back into a pre-plea procedural posture. Similarly, in *People v. Castro-Vasquez*, 148 Cal. App. 4th 1240, 1247 (2007), the court reversed the trial court's denial of the defendant's motion for statutory relief and remanded the matter, "direct[ing]" the lower court "to vacate the order denying the motion and enter a new order granting the motion, vacating appellant's conviction, and allowing appellant to withdraw his guilty plea and enter a plea of not guilty." That too merely put defendant back into a pre-plea posture, where the prosecutor could elect to take the case to trial or offer a new plea deal.

Three other district courts have correctly recognized that succeeding in vacating a guilty plea does not per se establish prejudice for § 1326(d) but merely moves the defendant to the next question: was it plausible *the criminal prosecution* would have ended without the same conviction? *United States v. Ambriz*, No. 17-CR-00055-YGR-1, 2019 WL 803843, at *7 (N.D. Cal. Feb. 21, 2019) ("defendant's prejudice argument fails" because "he has not shown that a conviction following trial would not have subjected him to the same immigration consequences,

nor has he adduced any substantial evidence suggesting the prosecutor might ultimately have agreed to a plea that would have allowed petitioner to avoid adverse immigration consequences") (internal quotations and brackets omitted); *see also United States v. Gaona-Cornejo*, No. 21-CR-00199-CRB-1, 2024 WL 2943772, at *12 (N.D. Cal. June 10, 2024), aff'd, 2025 WL 2992543 (9th Cir. Oct. 24, 2025) (citing *Ambriz* for same proposition); *Garcia-Gonzalez v. United States*, 2023 WL 3044907, at *3 (D. Ariz. Apr. 21, 2023) (finding no prejudice in a writ of coram nobis because even if the petitioner had not pleaded guilty, he "fail[ed] to show that proceeding to trial, rather than pleading guilty, would not have subjected him to the same immigration consequences").

Defendant relies on *United States v. Flores-Cervantes*, No. 2:15-CR-177-DSF, Dkt. No. 48 (C.D. Cal. May 25, 2016)), but that case is unpersuasive. Its flawed analysis failed to proceed to the next required step. It failed to address the governing regulations, failed to consider *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 759 (9th Cir. 2015) (discussed below), and relied on inapposite case law addressing different questions in direct immigration court appeals, not prejudice in a § 1326 case.

For example, it relied on *Chowdhury v. I.N.S.*, 249 F.3d 970, 975 (9th Cir. 2001), which was a direct petition for review of a Board of Immigration Appeals (BIA) decision finding the alien removable under § 1227(a)(2)(A)(iii)[1] as an alien convicted of an aggravated felony money laundering offense. The alien was a lawful permanent resident, so was placed into immigration court proceedings with a Notice to Appear (NTA) charging only that ground of removal, based on only one specific aggravated felony subsection: 8 U.S.C. § 1101(a)(43)(D) (money laundering exceeding § 10,000). In his petition for review, the alien argued the government failed to prove

[1] INA § 237(a)(2)(A)(iii).

the requisite quantity. The Ninth Circuit agreed. In order to agree, it first had to find jurisdiction. The government argued the Ninth Circuit lacked jurisdiction over the appeal by operation of a statutory bar that precluded considering appeals involving the commission of an aggravated felony. The government further attempted, at oral argument, to salvage the removal order on the merits by arguing that a different conviction (conspiracy to commit several other offenses) still made him an aggravated felon under different grounds, § 1101(a)(43)(G) and (U) (theft or attempted theft offense). The Ninth Circuit rejected these attempts, finding that the statutory jurisdictional bar does not "refer[ ] to felonies not charged at all in the [Notice to Appear]" and that, because he was not charged with the other conviction or the other aggravated felony ground, "[h]e did not have the benefit of a hearing before the IJ or the BIA on the grounds for removal suggested by the INS during oral argument." *Chowdhury*, 249 F.3d at 975. It's holding was straightforward: the alien's "money laundering conviction does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43). His conspiracy conviction was not specified in the Notice to Appear, and cannot serve as an independent basis for affirming the BIA's decision. As a result, we have jurisdiction to hear his appeal and we conclude that the BIA erred in finding him removable." *Id*. That has no bearing whatsoever on the question of whether an alien who is in administrative removal proceedings and succeeds in vacating his guilty plea establishes prejudice in a § 1326 prosecution.

*Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1103 (9th Cir. 2006), which *Flores-Cervantes* also relied on, was similar. That case was a direct petition for review appealing the BIA's denial of the alien's motion to reopen removal proceedings. The underlying proceedings in which he had been ordered removed found he was removable, and ineligible for adjustment of status, because of a controlled substance conviction for cultivating marijuana. The alien

thereafter successfully petitioned the California courts to vacate his conviction. The prosector then amended the charge to a lesser one, simple possession, to which the alien pleaded guilty. After he completed probation, the lesser conviction was expunged. Relevant here, the government argued, in part, that he should not be able to reopen his removal proceedings because the new conviction was not expunged until after his removal. The circuit said the timing doesn't matter because he wasn't charged with that crime in the NTA, and the effect of a successful motion to reopen would be to reopen the NTA. It remanded the case to the BIA "for a determination whether [the alien's] original conviction was vacated on the merits or because of immigration consequences." *Cardoso-Tlaseca*, 460 F.3d at 1108. This too has little bearing on whether an alien who is in administrative removal proceedings and succeeds in vacating his guilty plea can establish prejudice in a § 1326 prosecution. If anything, it supports the government's argument here by confirming that vacating a guilty plea in the California courts simply puts the alien back in pre-plea posture and the alien will still likely emerge from the prosecution with a conviction.

Here, defendant must show it was plausible that he would not have been convicted of the same offense at trial even after successfully vacating his guilty plea. Speculation is not enough. Nor is a mere possibility. On this record, he cannot meet his burden. The conviction record establishes the likelihood of conviction even without defendant's guilty plea. In accepting defendant's plea, the judge relied not only on defendant's admissions, but also on a doctor's report, a pre-plea report, and an impact statement from the father of one of the victims. ECF No. 36-1 at 34. A trial would have achieved the same result on the totality of evidence, and defendant has not claimed or plausibly established otherwise. In the face of this evidence, as well as the active participation of a parent advocating for his victim child, there is no basis to believe it was

plausible the district attorney would have agreed to a lesser charge. Especially given the aggravating factors here: defendant sexually abused two different children; they were just 13- and 12-years old; the nature of the abuse was egregious—sexual intercourse and forcibly touching his erect penis; and defendant fled the consequences of his abhorrent conduct for ten years, during which time the victims and their families suffered without justice. Defendant has not retracted his admissions, which he affirmed before the judge, that on different days he had sexual intercourse with a 12-year old and forced a 13-year old to grab his erect penis. ECF No. 36-1 at 32, 34. And even if the prosecutor offered a plea deal with a lesser charge (which defendant has not shown was plausible), defendant has not claimed that he would have accepted that plea. His adamant declaration that he "would not have plead guilty" if his attorney had told him about the consequences of the conviction, and that he "would have fought [his] criminal case" and "would have done anything to try and stay in the United States with [his] family," indicates he would not have accepted any plea. ECF No. 36-1 at ¶¶ 40, 55.

Defendant fails at the first step. He has not shown it is plausible that, even if he had obtained counsel and successfully vacated his guilty plea, he would not have still been convicted and remained amenable to administrative removal.

### C. Even if defendant met his burden to prove that vacating his guilty plea would have absolved him of administrative removal proceedings, his proceedings would have been transferred to immigration court.

But even if he had established it was plausible he would have emerged from the criminal prosecution without an aggravated felony conviction, he has not shown it was plausible that he would not have been transferred to immigration court for regular removal proceedings.

The regulations provide that if, after considering the alien's rebuttal and considering any additional evidence, the immigration officer "finds that the alien is not amenable to removal under section 238 of the Act," he "*shall* terminate the expedited proceedings under section 238 of the Act and *shall*, where appropriate, cause to be issued a notice to appear for the purpose of initiating removal proceedings before an immigration judge under section 240 of the Act." 8 C.F.R. § 238.1(d)(2)(iii) (2003) (emphasis added).

The Ninth Circuit has conclusively interpreted the governing regulations and the statute from which they flow. It has held that "[u]nder 8 U.S.C. § 1228, the government may place an undocumented alien convicted of an aggravated felony either into removal proceedings before an Immigration Judge or into administrative removal proceedings before an ICE agent." *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 759 (9th Cir. 2015) (citing 8 U.S.C. § 1228(b)(1)). Further, it has found that the regulation requires placing an alien into administrative removal proceedings "only if [the immigration officer] is 'satisfied that there is sufficient evidence' that the alien is eligible to be placed in these proceedings" and "permit[s] [the officer] to transfer an undocumented alien to removal proceedings before an Immigration Judge if [the officer] finds that the alien is not amenable to removal by administrative removal proceedings." *Id*. at 759–60 (citing 8 C.F.R. § 238.1(b)(1), 238.1(d)(2)(iii)) (internal quotations omitted).

*Cisneros-Rodriguez* affirmed that the prejudice inquiry for an alien who was placed in administrative removal proceedings must proceed to a prejudice inquiry in immigration court considering the ability to transfer. *Cisneros-Rodriguez*, 813 F.3d at 761. There, the court found prejudice because the regulations and record indicated the case plausibly would have been transferred: she already had a pending U-visa application with law enforcement certification approved; had she understood her right to get a lawyer, she would have gotten one; "a competent

lawyer would have discovered that she was eligible for [a U-visa based on the certification], would have informed ICE, and thereby would have prevented [her] immediate removal"; and the processing officer testified he had the authority to transfer the case. *Id*. at 753, 760, 762. And then, had the case been transferred, she "plausibly could have obtained" the U-visa for which she was facially eligible based on her already-pending U-visa application with approved certification. *Id*. A series of circumstances made it plausible: a DHS memo set out the department's policy to "stay the proceedings and removal of an alien who is facially eligible for a U-visa, even after he or she has been issued a final order of removal"; statistics showed that 70 percent of U-visa applications were granted; and the equities suggested the plausibility of favorable discretion because she had no significant criminal history until she was violently extorted over a three-month period to sell drugs by a car thief who she had reported to police, and even then she had never been sentenced to more than nine months in county jail; she "had lived most of her life in the United States; she was married to a U.S. citizen; she was raising two U.S. citizen children"; and she "had been a critical witness in the prosecution of [the extorter]." *Id*. at 762.

*Cisneros-Rodriguez* governs this case and sets out the prejudice analysis applicable here: "an undocumented alien attacking an administrative removal order may argue that a due process violation that occurred during her removal proceedings was prejudicial" only "if (a) [ ]he identifies a form of relief for which [ ]he was eligible to apply, notwithstanding [the] aggravated felony conviction, and (b) [ ]he establishes that it was 'plausible' that, but for the due process violation, [ ]he would have been permitted to apply for, and would have obtained, such relief." *Id*. at 761–62. Relief means relief from removal—which is what a U-visa would have provided. The circumstances here are nearly identical to *Cisneros-Rodriguez*. Like Cisneros-Rodriguez,

defendant claims that had he properly been advised of his rights in administrative removal proceedings, he would have exercised his right to counsel. Like Cisneros-Rodriguez, defendant claims that competent counsel would have obtained and relayed to the immigration officer additional information material to the propriety of administrative removal and would have sought to move the case to immigration court. Defendant agreed his case would have been transferred if he succeeded in vacating the aggravated felony conviction. Like Cisneros-Rodrigez, defendant (now, newly) claims that it was plausible he would have received relief from removal (there, a U-visa, here voluntary departure) while in immigration court.

The analytical chain requiring this Court to evaluate any prejudice in immigration court removal proceedings if finding that defendant plausibly would have obtained counsel and succeeded in vacating his § 288(a) conviction during administrative removal proceedings is mandated by *Cisneros-Rodriguez*; *see also United States v. Peralta-Sanchez*, 705 F. App'x 542, 544-46 (9th Cir. 2017) (requiring the same analytical chain for alien who claimed violation of the right to counsel in expedited removal proceedings at the border). *Cisneros-Rodriguez* does not require that the I-851 contain additional charges potentially relevant in immigration court proceedings, nor does it prohibit transferring the case when the I-851 does not contain a different charge other than the aggravated felony charge. As explained below, under the statute and regulations, it couldn't anyway. The processing of Cisneros-Rodrigez was identical to here. After her arrest, she was interviewed and told ICE she had been born in Mexico and entered without inspection. *Cisneros-Rodriguez*, 813 F.3d at 752. After she pleaded guilty, ICE reconsidered her case and placed her in administrative removal proceedings. *Id*. The I-851 contained a single charge of removal, which could only be the aggravated felony charge. *Id*. (noting she "admit[ed]

the charge of removability and waiv[ed] her right to contest it"). Like in *Cisneros-Rodriguez*, defendant's case plausibly would have been transferred.

First, the regulations would have required transfer, because defendant would no longer be "amenable" to administrative removal proceedings without an aggravated felony conviction.

Second, we know ICE was already prepared to place him in immigration court removal proceedings because it had already issued two NTAs. ECF No. 43-4, 43-8. ICE in Oregon first issued an NTA after defendant's 2003 theft conviction in Washington County, Oregon, but he was transferred to California to face the child sex abuse charges there, so it was not served. *See also* ECF No. 43-4 (NTA issued January 21, 2003), 43-5 at 1 (noting bench warrant). 43-6 (showing defendant booked into Orange County Jail on February 20, 2003). ICE in California issued a new NTA in October 2004, shortly before his release from prison for his November 14, 2003 aggravated felony conviction. ECF No. 43-8. Both NTAs alleged that defendant is an alien present in the United States who has not been admitted or paroled, is not a citizen or national of the United States, is a native and citizen of Mexico, entered the United States on an unknown date, and was not admitted or paroled. ECF No. 43-4, 43-8. Both NTAs also charge defendant with two grounds of removal: INA § 212(a)(6)(A)(i), for being present without admission or parole or arriving at a non-designated place; and INA § 212(a)(2)(A)(i)(I), for being an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude (CIMT). *Id*. The first NTA alleged a CIMT based on defendant's theft conviction; the second NTA alleged a CIMT based on his § 288(a) conviction. *Id*.

Defendant was only placed into administrative removal after an immigration officer interviewed him two weeks after the second NTA issued, during which defendant admitted to

facts that confirmed his eligibility for administrative removal. ECF No. 43-1 (documenting the interview conducted on October 20, 2004). The I-851 was issued the day after the interview. ECF No. 36-1.

Third, defendant's affidavit from immigration attorney Stacy Taeuber does not claim that removal proceedings would have ended had defendant obtained competent counsel who would have gotten the conviction vacated. Rather, it confirms that a competent attorney "would have requested a continuance of the Administrative Removal Proceedings and would also have advocated for Mr. Soria-Santana to be put into regular removal proceedings, rather than the FARO proceedings." ECF No. 36-1 at 44, ¶ 13.

Fourth, defense counsel agreed at oral argument that if defendant's conviction were overturned, he would have been put into immigration judge proceedings. ECF No. 52 at 17 (Court's Opinion and Order summarizing counsel's statement).

For these reasons, it is plausible—indeed, virtually certain, that, had defendant obtained competent counsel and even gotten the § 288(a) conviction vacated altogether, making him no longer "amenable" to administrative removal, he would have been transferred to immigration court removal proceedings.

So circling back to the court's first question: does the I-851 provide any other basis for defendant's removal? The answer is two-fold: yes, it does; but also, it doesn't have to. It is "yes" because the I-851 contains the same allegations as the two NTAs that would be reasserted upon case transfer: you are not a citizen or national of the United States; you are a native and citizen of Mexico; and you entered the United States without inspection. ECF No. 36-1. Those allegations underlie the charge of removal that defendant would face in immigration court proceedings, i.e, he is inadmissible under INA § 212(a)(6)(A)(i) for being present without admission or parole. He

might also face a CIMT charge too, like his earlier NTAs, but as discussed below, the statutory scheme does not permit either Section 212 charge to be alleged in an I-851.

The answer is also "it doesn't have to" because no charge except for the aggravated felony charge could permissibly be lodged in an I-851 under the statutory scheme. The I-851 here alleges two additional facts relevant only to administrative removal: you are not a lawful permanent resident, and you were convicted under § 288(a) and sentenced to a 3-year term of imprisonment. ECF No. 36-1 at 8. Based on those allegations, the I-851 lodges the only removal charge available in administrative removal proceedings—deportability under INA § 237(a)(2)(A)(iii). *Id*.

Congress structured the various types of removal proceedings and grounds of removal so that the I-851 could not have lodged any other charge. Normally, aliens who have not been admitted or paroled are subject to removal only under grounds of inadmissibility under INA § 212, while admitted aliens are subject to removal under grounds of deportability under INA § 237. *Barton v. Barr*, 590 U.S. 222, 234 (2020) (generally describing the statutory scheme). However, Congress created administrative removal as a unique carve-out applicable to *any* alien convicted of an aggravated felony who is not a lawful permanent resident or qualifying conditional resident—i.e., aliens without admission or parole, paroled aliens, admitted temporary non-immigrants, etc. *See* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1(b)(1)(iv) (2003). Thus, an alien who is otherwise inadmissible under § 212(a)(6)(A)(i) for being present without admission or parole becomes specially subject to the deportation ground of § 237(a)(2)(A)(iii) by virtue of the aggravated felony conviction and his status as a non-LPR or conditional resident. The normal charge of removal—§ 212(a)(6)(A)(i)—cannot be lodged in the I-851 that is based on the aggravated felony ground of removal under Section 237; *see also Barton v. Barr*, 590 U.S. at

236–37 (finding that Congress can create an immigration system that subjects an alien to immigration consequences under one removability section even when the scheme would not normally subject the alien to that section).

No case holds that a § 212(a)(6)(A)(i) must be contained in the I-851 for the case to be transferred to immigration court proceedings. Nor could it; such a finding would be contrary to Congress's statutory immigration scheme and the regulations implementing it, which designate unadmitted aliens as subject to § 212 charges, while also designating those same aliens as subject to a single § 237 charge—§237(a)(2)(A)(iii)—only when the alien is placed in administrative removal proceedings.

In its Opinion and Order, this Court cited *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) as holding that a defendant has established prejudice where his Notice to Appear "charged him as removable only for having committed an aggravated felony," and his conviction did not fit that definition. ECF No. 52 at 18. The government respectfully disagrees with the court's characterization of that holding. *Cisneros-Rodriguez* governs. *Camacho-Lopez*, which involves different facts and preceded *Cisneros-Rodriguez*, has no bearing here.

Camacho-Lopez was a lawful permanent resident who was convicted of an aggravated felony. *Camacho-Lopez*, 450 F.3d at 929. Consistent with the statutory scheme, because he was an LPR, he was placed into immigration judge removal proceedings with an NTA that lodged a single charge of deportability based on his aggravated felony conviction. *Id*. at 929, 930. As a lawful permanent resident, he was not eligible for administrative removal—the NTA was the only option. And aside from the aggravated felony charge, there was no other basis to remove

him.[2] The immigration judge found him deportable as charged in the NTA. *Id*. 929. But later case law invalidated defendant's conviction as an aggravated felony. *Id*. at 930.

In a two-sentence analysis, the Ninth Circuit found that he "clearly suffered prejudice" because he was removed when the only charge of removal lodged in the NTA was not viable. *Id*. It said nothing about charging requirements for an alien's transfer from administrative removal proceedings to immigration court proceedings: it did not involve administrative removal, did not address the statutory or regulatory scheme governing the administrative removal process, and did not even suggest that new or amended charges would have been impermissible. It was a narrow holding under the straightforward circumstances of that case: the alien's circumstances subjected him to only one ground of removal, he was charged only with that ground of removal, and that ground of removal was later invalidated—making him not deportable at all.

*Camacho-Lopez* did not broadly rule that an original charging document must contain all possible charges, else prejudice necessarily flows when circumstances later invalidate the sole charge. To the contrary, *Camacho-Lopez* affirmed that removal procedures allow an original charging document to be amended, and when that happens the court must consider the prejudice that flows from *all* the charges, the original one and the later-added one. It did so by endorsing and distinguishing *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004), a case that found that subsequently-filed "Additional Charges of Inadmissibility/Deportability based on [one conviction]" did not survive, but an original charge based on a different conviction did survive,

[2] Although the Ninth Circuit didn't spell it out, that was the only charge of removal that could have been lodged given that defendant was an LPR and there were no other facts supporting removal on a different ground. Even if his conviction was a crime involving moral turpitude, it does not appear to have been committed within five years of his 1978 admission as an LPR and there is no indication that he had been convicted of another crime involving moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i), (ii).

and the alien did not experience per se prejudice from the invalidation of the new charges given the validity of the original charge. *Camacho-Lopez*, 450 F.3d at 930, n.1.

Nor could *Camacho-Lopez* so broadly suggest that a removal proceeding cannot change shape in type or charges, which would be inconsistent with regulations that give authority and flexibility to immigration officials to amend charges and transfer cases between types of proceedings. For example, a regulation governing immigration court proceedings allows the government to lodge new or replacement charges any time before a final order. *See* 8 CFR § 1003.30 ("[a]t any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations may be lodged by the Service in writing."). Ninth Circuit case law shows that immigration authorities regularly make use of additional or replacement charges in immigration court removal proceedings. *See Dominguez v. Barr*, 975 F.3d 725, 732 (9th Cir. 2020) (noting Form I-261 was filed with an additional charge); *Morgan v. Gonzales*, 495 F.3d 1084, 1088 (9th Cir. 2007) (Form I-261 filed to add a new charge of removal after conviction for aggravated felony); *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 716 (9th Cir. 2003) (affirming aggravated felony conviction lodged in a Form I-261 as additional basis for deportability); *Falomir-Montoya v. Garland,* 2022 WL 3974272, at *1 (9th Cir. Aug. 31, 2022) (DHS properly raised additional conviction in a Form I-261 as additional basis for deportability); *De Freitas v. Mukasey,* 256 F. App'x 985, 987 (9th Cir. 2007) (noting that the alien was disqualified from relief based on an additional charge of deportability lodged after the original NTA).

Regulations also permit immigration authorities to cancel an NTA or move to dismiss pending immigration court proceedings to make use of other available proceedings, like administrative removal or reinstatement of removal. 8 C.F.R. §§ 239.2(a)(6) (ground to dismiss

because NTA was "improvidently issued"), (7) (ground to dismiss because "circumstances have changed . . . to such an extent that continuation if no longer in the best interest of the government"), (c), 1239.2; *see also In Re G-N-C*, 22 I. & N. Dec. 281, 283–84 (BIA 1998) (discussing the regulations); *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 890 (9th Cir. 2018) (same); *see also Okobi v. Holder*, 527 F. App'x 710, 713 (10th Cir. 2013) (rejecting challenge to cancellation of NTA and initiation of administrative removal because "a DHS officer may cancel such notice prior to jurisdiction vesting with the immigration judge, if the officer is satisfied that the notice to appear was improvidently issued" and the petitioner "failed to show that there was any legal bar to a finding of improvidence in this case") (internal quotes omitted); *Lopez v. Garland*, 40 F.4th 996, 999 (9th Cir. 2022) (finding no jurisdiction to review dismissal of NTA on government motion in order to institute reinstatement of removal proceedings instead). *Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1243 (10th Cir. 2012) (finding no jurisdiction to review dismissal of NTA and subsequent placement in administrative removal proceedings);

Thus, whereas *Camacho-Lopez* "was removed when he should not have been," 450 F.3d at 930, defendant, at most, was simply removed by the wrong process. He was still subject to removal, and he still would have been removed because, as discussed below, relief was not plausible.

In short: defendant has not established it was plausible that he would have emerged from his criminal prosecution without a conviction subjecting him to administrative removal even if he had successfully vacated his guilty plea; even if he had, thus becoming no longer "amenable" to administrative removal, the regulations governing administrative removal would have required transferring defendant's case to immigration judge removal proceedings and the evidence in this case—including defendant's agreement—shows that transfer plausibly would have happened; no

authority prohibits transferring the case simply because the I-851 does not include the charge of removal that would be subsequently lodged in the NTA; Congress's statutory scheme does not permit lodging any charge other than § 237(a)(2)(A)(iii) in the I-851—a charge that does not apply to aliens in regular removal proceedings who have not been admitted or paroled and are subject only to charges under Section 212; an assortment of regulations contemplates the government's ability to, and discretion to decide to, transfer aliens to and from the different types of removal proceedings; and, in any event, the I-851 here contains the allegations necessary to support an § 212(a)(6)(A)(i) charge in removal proceedings upon defendant's transfer to immigration court proceedings. Nothing more is required to transfer defendant's case to immigration court.

**2. If yes, does depriving Soria-Santana of the ability to seek voluntary departure constitute prejudice?**

Because the case plausibly would have been transferred to the immigration court, the answer to the court's next question is, no: there is no prejudice from the assumed failure to advise defendant of his rights in administrative removal proceedings because defendant has not been deprived of the right to seek voluntary departure, which is available in immigration court. Again, though, the ultimate relevant question is this: is it plausible that defendant would have been granted voluntary departure? If it is not plausible, defendant has not met his burden to establish prejudice from the alleged due process violation. As described below, a grant of voluntary departure was not plausible because—even without the § 288(a) conviction—he was statutorily ineligible for it, plus his circumstances at the time of removal made a favorable exercise of discretion implausible.

**A. Voluntary Departure was not plausible.**

There are two types of voluntary departure: pre-conclusion and post-conclusion. *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 618 n.3 (9th Cir. 2006) (describing the history of voluntary departure and its two forms). Pre-conclusion voluntary departure is a “fast track” path permitted only “prior to the completion” of removal proceedings. 8 U.S.C. 1229c(a)(1) (2003); *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 n.1 (9th Cir. 2004). It is only available if the alien asks for it “prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing,” “makes no additional requests for relief,” “concedes removability,” “waives appeal of all issues,” and “has not been convicted of [an aggravated felony].” 8 C.F.R. § 240.26(b)(1)(i) (2003); *Garfias-Rodriguez v. Holder*, 702 F.3d 504, 523–24, 525–27 (9th Cir. 2012) (finding Congress granted the Attorney General the authority to promulgate regulations governing eligibility for voluntary departure); *Gonzalez-Juarez v. Sessions*, 725 F. App’x 585, 586 (9th Cir. 2018) (affirming the regulatory timing restriction on pre-conclusion voluntary departure).

Post-conclusion voluntary departure may be granted “at the conclusion of” removal proceedings but is more burdensome to achieve. 8 U.S.C. 1229c(b)(1) (2003); 8 C.F.R. § 240.26(c)(1) (2003). This requires the alien to show he “has been physically present in the United States” for at least one year before service of the NTA; that he “is, and has been, a person of good moral character for at least five years immediately preceding the application”; that he has not been convicted of an aggravated felony or terrorism offense; and that he has the means to depart and the intention to do so. 8 C.F.R. § 240.26(c)(1) (2003). This is what an alien seeks if he has tried for other forms of relief first, which have been denied.

An alien seeking either form of voluntary departure "must first establish his statutory eligibility," and then must "show that he is entitled to a favorable exercise of agency discretion." *Gutierrez-Alba*, 128 F.3d at 1326 (addressing post-conclusion voluntary departure); *Rojas-Pedroza*, 716 F.3d at 1264 (9th Cir. 2013) ("pre-conclusion voluntary departure is a form of discretionary relief").

Here, defendant declares, "[i]f I had known I could challenge my deportation, I would have done so. I would have done anything to try and stay in the United States with my family." ECF No. 36-1 at 6, ¶ 53. Further, "[i]f I had known I could challenge my deportation and understood what kind of opportunities I potentially had available to me, I would have done so." *Id*. at ¶ 55. The only rational inference from these statements is that, after being transferred into immigration court proceedings, he "would have done" whatever he could "to try to stay in the United States with [his] family," which would be to apply for whatever relief was arguably available, such as cancellation of removal and/or asylum (although for the reasons stated in the government's response brief, he could not meet the statutory requirements for either, *see* ECF No. 43 at 21–22[3]). Thus, it is not plausible that he would have conceded removability, made no additional request for relief, and instead requested to leave the United States on a fast-track basis, as required for pre-conclusion voluntary departure.

The only available form of voluntary departure at issue here, then, is post-conclusion voluntary departure. But receiving post-conclusion voluntary departure was not plausible at the time of his removal proceeding, even if his § 288(a) conviction had been vacated, because he has

---

[3] In addition to being ineligible for cancellation of removal on the hardship ground, as discussed in the government's response brief, defendant could not have established the required continuous physical presence for ten years, given his numerous departures and re-entries and lengthy time in Mexico. 8 U.S.C. § 1229b(b).

not shown that he plausibly would have met the good moral character requirement. This is so for two reasons: he cannot show beyond speculation that (1) he would not have been convicted of a lesser offense that was still a crime involving moral turpitude that statutorily bars relief; or that (2) he could otherwise establish good moral character given the cumulative facts of the nature of his sex abuse conduct and his flight from that offense into the good moral character window, his 1999 and 2003 Oregon convictions, and his multiple illegal reentries, all in the good moral character period.

**i. Defendant cannot establish that post-conclusion voluntary departure was plausible because he was statutorily ineligible for it even with a § 288(a) conviction.**

First, defendant has not shown it was plausible he could have established that he was a person of good moral character for the five years preceding October 29, 2004 (the date of his administrative removal order). Even if he could have convinced the prosecutor to offer a lesser charge, it is not plausible, beyond speculation, that charge would not have also been statutorily preclusive as a crime involving moral turpitude, even if not an aggravated felony. ECF No. 36-1 at ¶¶ 40, 55; *see e.g., Gonzalez-Cervantes v. Holder*, 709 F.3d 1265, 1267 (9th Cir. 2013) (misdemeanor sexual battery under California Penal Code 243.4(e) is a crime involving moral turpitude); *Gutierrez-Alba*, 128 F.3d at 1326 (finding no prejudice because defendant would have been barred from post-conclusion voluntary departure for committing a crime involving moral turpitude).

And even if defendant managed to escape his California prosecution with no conviction at all, the underlying conduct nevertheless would have weighed heavily against finding good moral character. "[E]vidence of [a voluntary departure applicant's] sexual conduct with a minor is probative as to his bad character" even without a conviction. *Rojas v. Holder*, 704 F.3d 792,

794 (9th Cir. 2012); *see also Lopez v. Garland*, 2021 WL 5071502, at *1 (9th Cir. Nov. 2, 2021) ("Evidence related to a crime for which a petitioner was not convicted may still be probative of . . . a petitioner's bad character," affirming the immigration judge's ability to consider external evidence like statements to police in weighing discretion). The nature and scope of defendant's misconduct, involving two victims, aged 12 and 13, and forced intercourse and sexual touching, unequivocally reflects poor moral character. And although the underlying conduct had occurred years earlier, time does not turn that bad moral character into good moral character when he fled facing the consequences of that conduct for ten years—into the moral character period—depriving the children and their families of justice. Pile on top of that two within-period convictions for theft and possession of a forged instrument as a lesser included offense with a second theft charge dismissed—not official crimes involving moral turpitude but nevertheless detracting from his moral character—and several illegal entries within the 5-year period, and he cannot show that it was plausible he would have been found to be a person of good moral character for the required period. *See* ECF No. 43-1 (self-reported 1998 entry), 43-2 (self-reported 1999 entry), 43-3 (self-reported 2000 entry).

Defendant cannot establish that he plausibly could meet the statutory good moral character requirement for post-conclusion voluntary departure. That ends the inquiry. His 1326(d) motion must fail because he has not met his burden to prove prejudice. But even setting aside statutory eligibility, he has also failed to prove he plausibly would have merited a favorable exercise of discretion for post- *or* pre-conclusion voluntary departure. For that separate reason, his motion fails.

**ii. Defendant cannot establish that post-conclusion or pre-conclusion voluntary departure were plausible because he cannot show that a favorable exercise of discretion was plausible.**

A long line of Ninth Circuit caselaw shows the difficulty in meeting the high prejudice threshold in claims alleging the plausibility of voluntary departure. *United States v. Nunez*, 140 F.4th 1157, 1169 (9th Cir. 2025), *cert. denied sub nom. Nunez Sanchez v. United States*, 146 S. Ct. 1866 (2026) (no prejudice because voluntary departure not plausible); *United States v. Gonzalez-Flores*, 804 F.3d 920, 928 (9th Cir. 2015) (same); *United States v. Valdez-Novoa*, 780 F.3d 906, 917 (9th Cir. 2015) (same); *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1264 (9th Cir. 2013) (same); *see also United States v. Morin-Moreno*, 2026 WL 1452438, at *2 (9th Cir. May 22, 2026) (same); *United States v. Zavala-Cruz*, 2023 WL 4578828 (9th Cir. July 18, 2023) (same); *United States v. Medina*, 2023 WL 1960649, at *2 (9th Cir. Feb. 13, 2023) (same); *United States v. Santos-Santos*, 2022 WL 2801033, at *1 (9th Cir. July 18, 2022) (same); United *States v. Martinez-Sanchez*, 668 F. App'x 274, 275 (9th Cir. 2016) (same); *United States v. Gonzalez-Melchor*, 511 F. App'x 646, 648 (9th Cir. 2013) (same); *United States v. Contreras*, 406 F. App'x 160, 161 (9th Cir. 2010) (same).

The Ninth Circuit has meticulously laid out the requirements for a defendant to establish the plausibility of discretionary relief, and they are not easy to meet. This Court must consider "the positive and negative factors an IJ would consider relevant to an exercise of discretion." *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015); *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1264 (9th Cir. 2013). "Favorable equities include long residence, close family ties to the United States, and humanitarian needs." *Gonzales-Flores*, 804 F.3d at 927. "Unfavorable equities include 'the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and

recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident.'" *Id.*; *see also Rojas*, 704 F.3d at 794.

Where negative factors exist, a countervailing showing of positive equities is central to a favorable exercise of discretion. *Rojas-Pedroza*, 716 F.3d at 1265; *Gonzales-Flores*, 804 F.3d at 928-929; *see also United States v. Gonzalez-Alvarez*, 2018 WL 2717265, at *17 (S.D. Cal. May 18, 2018) (collecting cases in which plausible relief was found because substantial positive equities overcame negative criminal history). It is not enough to simply cite a string of cases where aliens with worse criminal records than the defendant were found to have plausible claims to discretionary relief. *Rojas-Pedroza*, 716 F.3d at 1265; *United States v. Andino-Matamoros*, 365 F. Supp. 3d 1109, 1117 (D. Nev. 2019).

The Court must "focus on whether aliens with similar circumstances received relief." *Id.* at 927-928. However, the existence of a single case that is arguably on point is "plainly insufficient." *Id.* at 928. Rather, it means "only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded [such relief]." *Id.*

The Ninth Circuit has affirmed that "administrative agencies have great latitude in exercising their discretion to grant or deny requests for voluntary departure." *Rojas v. Holder*, 704 F.3d 792, 794 (9th Cir. 2012). "The purpose of voluntary departure is, after all, to encourage the alien to depart without further ado." *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1173 (9th Cir. 2003), as amended (Apr. 25, 2003). Thus, it is appropriate to deny voluntary departure where an alien's repeated unlawful entries into the United States shows he "does not abide by the lawful regulations and laws of the United States." *Gonzalez-Espitia v. Garland*, 2023 WL 2675066, at *1 (9th Cir. Mar. 29, 2023) (affirming denial of voluntary departure where alien had eight illegal entries).

Here, defendant cannot establish plausible favorable discretion on this record. At the time of removal, defendant had just been convicted of sexually abusing two young girls. Even if he had avoided the specific aggravated felony conviction, his egregious conduct almost certainly would have resulted in some other conviction based on the same facts, and even if not that, it was still supported by external evidence, including the medical reports and father's victim impact statement, and, presumably the police reports, which would continue to weigh heavily against favorable discretion. Defendant has never claimed innocence. Even reducing the weight of that conduct considering its age at the time of removal, he had two more recent convictions that showed his continued flouting of U.S. law and reflected a continued disengagement with the community. He had also treated the border like a personal revolving door, entering and reentering illegally at his leisure. His declaration admits to at least three illegal entries before his 2004 removal. ECF No. 36-1 at 2–3, ¶¶ 10, 12, 14. Evidence indicates three more. ECF No. 43-1 (self-reported 1998 entry), 43-2 (self-reported 1999 entry), 43-3 (self-reported 2000 entry). He had illegally brought his Mexican wife and children with him to live in the United States. ECF No. 36-1 at 2–3, at ¶¶ 12, 14. And he worked illegally in the United States for long periods while living back and forth between here and Mexico. Illegal employment might cut both ways by showing continuous illegal activity on the one hand, and industriousness and business ties on the other, but here the balance tips toward the negative since defendant had some knowledge of how to obtain an employment-based visa, which his brother allegedly got while defendant was working with him in the California fields, yet defendant never tried the lawful route himself. *Id.* at ¶ 10.

These negative circumstances outweigh any positive factors, such as his alleged-but-uncorroborated lawful permanent resident parents and sibling—who lived in a different state and

for whom there is no evidence that he supported—and his one very young United States citizen child. This Court need not take my word for it. The Ninth Circuit has said so itself, in affirming denials of discretionary relief in comparison cases.

For example, in *Nunez*, 140 F.4th at 1169, the defendant's equities in "entering the United States as a child," being "engag[ed] to a U.S. citizen" and "having a U.S. citizen daughter" did not overcome his criminal history of "a recent conviction" for possessing drugs while armed and an "outstanding charge" for possessing drugs. Even if Nunez had pointed to a similar case where voluntary departure was granted—which he didn't—showing that it was "possible or conceivable" would not have been enough. *Id*. In *Rojas-Pedroza*, 716 F.3d at 1258, 1265–67, the applicant "lived 'off and on' in the United States," had immediate family in the United States but none who were United States citizens or residents, and had two illegal entries and four misdemeanor convictions. The Ninth Circuit found his two illegal entries and misdemeanor convictions outweighed his "intermittent" presence. In *Valdez-Novoa*, 780 F.3d at 917–921, the Ninth Circuit found voluntary departure not plausible even where the applicant "had arrived in the U.S. as a child," "spent most of his life in the U.S." and had lawful permanent resident parents and eight siblings in the United States, "some or all of whom were either citizens or lawful permanent residents." It explained that, while "the presence of family members who are citizens or lawful permanent residents is an important positive equity," "it is hardly dispositive," and pointed to many cases where the BIA affirmed the denial of voluntary departure for applicants who "claimed equally compelling ties to the U.S." *Id.* at 921. Valdez-Novoa's serious criminal history, which included two felonies involving injury and three misdemeanors, outweighed his strong ties. *Id.* at 917. In *Santos-Santos*, 2022 WL 2801033, at *1, the negative factors of three misdemeanor convictions, for a DUI, driving without a license,

and shoplifting, outweighed positive equities of residing and working in the United States for several years, lawful permanent resident and citizen nephews, and engagement to a U.S. citizen.

Comparable BIA case law also undercuts the plausibility of defendant receiving favorable discretion. *See Matter of Posadas–Posadas*, 2012 WL 371659 (BIA Jan. 18, 2012) (affirming denial of voluntary departure where the alien was arrested twice for driving on a suspended license and had one DUI, despite the alien's family ties and lengthy stay in the United States); *Matter of Serna*, 20 I. & N. Dec. 579, 580, 586 (BIA 1992) (upholding denial of voluntary departure where the alien had a single conviction for the possession of an altered immigration document even though alien had been residing in the United States for seven years, and intended to marry a U.S. citizen with whom he had a U.S. citizen child).

And, of course, defendant would have no chance of discretionary relief with a child sex abuse conviction, even if it was not for § 288(a) or even a technical crime involving moral turpitude, as the Ninth Circuit has affirmed the denial of discretion in such cases where the applicants' equities were arguably much stronger than defendant's. *See e.g., Dominic MBA v. Gonzales*, 231 F. App'x 726, 727 (9th Cir. 2007) (affirming denial of motion to reopen finding it unlikely that favorable discretion would be exercised to grant cancellation of removal given convictions for child sex abuse and corporal injury to spouse, regardless of positive equities such as lengthy residence in the United States); *Taylor v. U.S. I.N.S.*, 24 F.3d 249 (9th Cir. 1994) (affirming denial of discretionary waiver of inadmissibility after convictions for child molestation, despite U.S. citizen wife and two citizen children, lengthy residence in the United States, military service, graduation from college and steady employment in the United States); *Farias-Avalos v. I.N.S.,* 24 F.3d 245 (9th Cir. 1994) (affirming denial of discretionary waiver of inadmissibility after convictions for child molestation); *See also Shepherd v. U.S. Atty. Gen.*, 559

F. App'x 837, 839 (11th Cir. 2014) (criminal conviction for child sexual abuse and the nature and underlying circumstances of the conviction outweighed equities in advanced age, longtime residency in the United States, employment history, home ownership, family ties in the country, and the potential hardship to his ailing wife in denying discretion for cancellation of removal); *In Re: Luciano Duran-Arreola A.K.A. Luciano Arreola*, 2015 WL 8561140, at *1 (DCBABR Nov. 23, 2015) (BIA opinion affirming denial of voluntary departure because conviction for solicitation to commit child abuse with sexual motivation outweighed family ties and isolated nature of the conviction).

The Ninth Circuit has repeatedly emphasized the important difference between plausible and merely possible or conceivable. Defendant's minimal favorable equities at the time of his removal—one young U.S. citizen child and (alleged) lawful permanent resident parents and a brother, who live independently in another state, thus minimizing the value of this equity—do not outweigh the serious nature, scope, and recency of his criminal history, his repeated illegal reentries, and his unauthorized employment when a lawful path appeared to be viable. Even if favorable discretion was possible or conceivable, it was not plausible.

Because defendant is ineligible for post-conclusion voluntary departure and, additionally, because the case law and circumstances of this case show that a favorable exercise of discretion was not plausible for post- *or* pre-conclusion voluntary departure, defendant has not met his burden to establish prejudice. *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1203 (9th Cir. 2014).

/ / / /

/ / / /

/ / / /

## CONCLUSION

Defendant's collateral attack under § 1326(d) cannot succeed because he has failed to establish prejudice. His motion must be denied.

Dated: July 29, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Sarah Barr*
SARAH BARR, WSB #40758
Assistant United States Attorney